# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

CAROLYN FOY, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

THE HOME SECURITY SUPERSTORE, LLC,

    Defendant.

Case No. 22-cv-_____

## NOTICE OF REMOVAL

Defendant The Home Security Superstore, LLC ("HSS"), by and through its counsel of record, hereby gives notice of removal of this action from the Ninth Judicial Circuit Court in and for Orange County, Florida to the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. §§ 1332(d), 1441, and 1446. In support, Defendant respectfully states as follows:

### PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL

1. On January 30, 2022, Plaintiff Carolyn Foy ("Plaintiff") commenced this putative class action, captioned as *Carolyn Foy v. The Home Security Superstore, LLC*, Case Number 2022-CA-000834-O, against HSS in the Ninth Judicial Circuit Court in and for Orange County, Florida ("State Court Action").

2. Pursuant to 28 U.S.C. § 1446(a), a true and correct copy of the operative

complaint against HSS ("Complaint" or "Compl.") in the State Court Action is attached to this Notice as **Exhibit ("Ex.") A**, and true and correct copies of all other process, pleadings, and orders purportedly served upon HSS in the State Court Action are attached to this Notice as **Ex. B**.

3. A true and correct copy of the Register of Actions from the State Court Action is attached to this Notice as **Ex. C**.[1]

4. Plaintiff purportedly served HSS with a summons and the Complaint in the State Court Action on March 7, 2022. *See* Return of Service filed in the State Court Action, attached hereto as **Ex. D**. This Notice of Removal is therefore timely pursuant to 28 U.S.C. § 1446(b).

## JOINDER

5. No other defendants have been named in this action, and therefore, no joinder of additional defendants to this removal is necessary.

## RELEVANT ALLEGATIONS

6. Plaintiff's single-count Complaint seeks relief from HSS, on behalf of herself and a putative class of similarly-situated persons, for allegedly making or causing to be made unlawful "telephonic sales calls" (specifically, text messages) without the "prior express written consent" of the recipients thereof, in violation of

---

[1] Plaintiff's Motion for Class Certification, filed on April 5, 2022, does not yet appear on the online State Court docket. Nonetheless, a copy of that motion is included in Composite Exhibit B.

the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059(8)(a).  *See* Compl. ¶¶ 1, 2, 9, 48-54.

7. More specifically, Plaintiff's Complaint alleges, *inter alia*, that (i) "Defendant used a messaging platform … which permitted Defendant to transmit blasts of text messages automatically" to her and the putative class members in violation of the FTSA; (ii) "Defendant has [allegedly] placed telephonic sales calls [*i.e.*, text messages] to telephone numbers belonging to at least 50 persons throughout Florida without their prior express written consent"; (iii) she "believes the [putative] Class members are at least 50 individuals"; (iv) "the aggregate damages sustained by the [putative] Class are in the millions of dollars"; (v) "Defendant made and/or knowingly allowed telephonic sales calls to Plaintiff and the Class members" in this case; and (vi) "Plaintiffs claims are typical of the claims of the [putative] Class members, as they are all based on the same factual and legal theories." Compl. ¶¶ 19, 38, 39, 43, 45, 53.

8. The Complaint seeks statutory damages in the amount of at least $500.00 per violation (*i.e.,* "a minimum of $500.00 in damages" for each alleged violative text message sent to Plaintiff and the putative class members), injunctive and declaratory relief, and "any other available legal or equitable remedies." *Id.* ¶¶ 4, 8, 54, Prayer.  Furthermore, statutory damages can be trebled under the FTSA for willful or knowing violations, up to $1,500 per violation. Fla. Stat. § 501.059(10)(b).

9. On April 5, 2022, Plaintiff filed a Motion for Class Certification claiming, *inter alia*, that (i) the class size is "likely into the thousands,"; and (ii) "the classes of persons affected . . . consists of at last 100 persons". Motion for Class Certification at p. 5.

10. HSS disputes Plaintiff's allegations, believes the Complaint lacks any merit, and denies that Plaintiff or the putative class has/have been harmed in any way or that this case is capable of or appropriate for class treatment. By seeking removal, HSS does not waive any arguments with respect to the Complaint.

## CAFA JURISDICTION

11. This Court has jurisdiction over this case pursuant to the Class Action Fairness Act ("CAFA"), specifically 28 U.S.C. § 1332(d)(2) & (5), which together provide, *inter alia*, that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant…" and require that the proposed class must contain at least 100 persons. *See also Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006) (summarizing CAFA removal requirements); *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 (11th Cir. 2006) (same). As shown below, this case readily meets all of these requirements.

12. First, the State Court Action is a "class action" under 28 U.S.C. §

1332(d)(2), because Plaintiff seeks to represent a class of similarly situated individuals pursuant to Florida Rules of Civil Procedure 1.220(b)(2) and (b)(3). Compl. ¶¶ 4, 27-36; *see also Senger Bros. Nursery, Inc. v. E.I. Dupont de Nemours & Co.,* 184 F.R.D. 674, 682 (M.D. Fla. 1999) ("Florida Rule of Civil Procedure 1.220 is patterned after Federal Rule of Civil Procedure 23.").

13. <u>Second</u>, there is minimal diversity between Plaintiff and members of the putative class on the one hand and HSS on the other. *See, e.g., McDaniel v. Fifth Third Bank*, 568 F.App'x. 729, 731 (11th Cir. 2014) (accepting Plaintiff's allegations as true for purposes of the court's jurisdictional analysis); *Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 911-12 (11th Cir. 2014) (minimal diversity met for CAFA where "any member of the plaintiff class is a citizen of a state different from the state of citizenship of any defendant"). In this regard, Plaintiff alleges that she is a "citizen and resident of Orange County, Florida" (Compl. ¶ 5), seeks to certify a Florida-specific class (*id.* ¶ 37), and alleges that HSS is a "foreign corporation" that "maintains its primary place of business and headquarters in Alpharetta, Georgia" (*id.* ¶ 7).

14. <u>Third</u>, a plain reading of Plaintiff's state-court filings firmly establishes that the possible class number exceeds the 100 class members required for the Court to have jurisdiction under CAFA. 28 U.S.C. § 1332(d)(2), (5). Plaintiff's recently filed Motion for Class Certification claims: (i) the class size is "likely into the

thousands,"; and (ii) "the classes of persons affected . . . consists of at last 100 persons". Motion for Class Certification at p. 5.

15.   Fourth, the amount in controversy well exceeds the requisite minimums under CAFA based on the face of Plaintiff's Complaint alone. *See, e.g., Roe v. Michelin N. Am., Inc.,* 613 F.3d 1058, 1061-1062 (11th Cir. 2010) ("[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements" and may make "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that a case is removable."); *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met); *Fox v. Ritz-Carlton Hotel Co., L.L.C.,* 977 F.3d 1039, 1045 (11th Cir. 2020) ("'If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction.'") (quoting *Cappuccitti v. DirecTV, Inc.*, 623 F.3d 1118, 1122 n.8 (11th Cir. 2010)).[2]

---

[2] Defendant does not concede (and indeed disputes) that Plaintiff is entitled to recover any damages, nor is it required to do so for present purposes. *See, e.g., Anderson v. Witco Life Ins. Co.,* 943 F.3d 917, 924 (11th Cir. 2019) ("A defendant seeking to remove a case to federal court must file a notice of removal that includes 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'"); *Mangano v. Garden Fresh Rest. Corp.*, 2015 WL 5953346, at *1 (M.D. Fla. Oct. 13, 2015) ("A Notice of Removal must plausibly allege the jurisdictional amount, not prove the amount."); *Dudley v. Eli Lilly & Co.,* 778 F.3d 909, 913 (11th Cir. 2014) ("'[A] removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it.' [] Moreover, at the jurisdictional stage, 'the pertinent

16. In particular, and as noted above, Plaintiff seeks $1,500 for each text message sent to each class member. Paragraph 11 of the Complaint identifies at least four text messages allegedly sent to Plaintiff by HSS. Plaintiff's Motion for Class Certification claims that the number of class members is "likely into the thousands." Based on the allegations in the Complaint and reasonable deductions and inferences to be drawn thereon, the alleged amount in controversy in this case easily exceeds $5,000,000. *See Roe,* 613 F.3d at 1061-1062; *Williams,* 269 F.3d at 1319; *Fox,* 977 F.3d at 1045. For example, conservatively estimating that the putative class members received more than one violative text message like Plaintiff allegedly did (*i.e.,* that Plaintiff's claims are truly "typical" of the putative class, as she proffers), and that each putative class member would be entitled to up to $1,500 in trebled statutory damages under the FTSA for a proven "knowing" violation., it is plausible that the amount in controversy alleged in this Complaint exceeds the CAFA minimum threshold (*i.e.*, 2,000 putative class members, multiplied by 2 texts each, multiplied by $1,500 per text in trebled damages equals $6 million). If each class member "typically" received the same number of text messages as Plaintiff allegedly did, the alleged amount in controversy increases substantially (*i.e.*, 2,000 putative class members, multiplied by 4 texts each, multiplied by $1,500 per text in trebled

---

question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.'") (quoting *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 751, 754 (11th Cir. 2010)).

damages equals $12 million). Courts in the Eleventh Circuit and elsewhere routinely calculate the amount in controversy for removal purposes in this fashion.[3] *See, e.g., Doss v. Am. Fam. Home Ins. Co.*, 47 F. Supp. 3d 836, 840 (W.D. Ark. 2014) ("Using the named Plaintiffs as 'typical' class members and multiplying their claims by the number of persons estimated in a class is precisely how courts generally determine the estimated amount in controversy" under CAFA); *Torres v. Countrywide Home Loans, Inc.*, 2014 WL 3742141, at *2 (S.D. Fla. July 29, 2014) (calculating amount in controversy under CAFA in this manner, holding that "if every member of the proposed class has a claim worth the same amount as Plaintiff's, the amount in controversy is easily satisfied"); *Bayberry Lakes Homeowners Ass'n, Inc. v. Boeneman*, 2018 WL 6680993, at *1–2 (M.D. Fla. Sept. 28, 2018) (concluding multiplying the amount of damages of one plaintiff across the putative class clearly shows the damages meet the CAFA jurisdictional threshold) (citing *Pretka*, 608 F.3d at 769); *Bankhead v. Castle Parking Sols., LLC*, 2017 WL 10562976, at *3 (N.D. Ga. Dec. 1, 2017) (determining amount in controversy based on allegations in the complaint alone, using plaintiff's estimates regarding damages and potential class size

---

[3] Defendant acknowledges that, in *Pretka*, the Eleventh Circuit held that "[t]he typicality element of a class action, by itself, does not allow us to infer that the *amounts* of the named plaintiffs' claims are similar to those of other class members." 608 F.3d at 769 (emphasis in original). Here, the Court need not infer any amounts and need only look to the Complaint. Indeed, according to the Complaint, each putative class member would be entitled to $500 or $1,500 per unlawful text, would had to have received at least one such text be in the class, likely received more than one text, and may have received as many as four texts (assuming Plaintiff's claim is truly "typical" as alleged).

as a "base amount"); *Scott v. Ing Clarion Partners, LLC,* 2006 WL 3191184, at *4 (N.D. Ga. Oct. 31, 2006), *aff'd*, 262 F. App'x 983 (11th Cir. 2008) (calculating the amount in controversy for the class by multiplying amount of plaintiff's alleged damages by size of class).[4] And all this is before attorneys' fees (which are available under the FTSA) are taken into account, which may also be considered in determining the amount in controversy. *See, e.g., Federated Mut. Ins. Co. v. McKinnon Motors*, 329 F.3d 805, 808, n.4 (11th Cir. 2003) (courts may also factor in possible attorneys' fee awards, where permitted by statute, when determining the amount in controversy for removal purposes); *Sheffield Woods at Wellington Condo. Ass'n, Inc. v. Scottsdale Ins. Co.,* 2009 WL 2255219, at *1 (M.D. Fla. July 28, 2009) (finding amount in controversy met, in part based upon plaintiff's claim for fees pursuant to Florida statute).

17. Thus, all of the CAFA removal requirements are met in this case and, as such, removal to this Court is proper.

---

[4] *See also Napoli v. HSBC Mortg. Servs. Inc.,* 2012 WL 3715936, at *2 (D.N.J. Aug. 27, 2012) ("Because Plaintiffs' claims are alleged to be typical of the class, it is reasonable for this Court to simply multiply their purported damages amount by the number of foreclosures alleged in the Complaint.") (collecting cases); *Alper v. Select Portfolio Servicing, Inc*., 2019 WL 3281129, at *3 (D. Mass. July 19, 2019) ("Because named plaintiffs purport to represent a class, their alleged damages provide an appropriate basis on which to calculate the damages of a typical class member."); *In re Blackbaud, Inc*., 2021 WL 1940581, at *5 (D.S.C. May 14, 2021) (ruling similarly).

## CONCLUSION

18. HSS, having satisfied all requirements for removal pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, respectfully submits this Notice of Removal, requests that the State Court Action be removed to this Court, and requests that the Court assume full jurisdiction over the case herein as provided by law.

WHEREFORE, HSS hereby respectfully removes this civil action to this Court.

DATED:  April 6, 2022                    Respectfully submitted,

**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: 305-374-0440

By: *s/ Yaniv Adar*
 Yaniv Adar, Esq.
 Florida Bar No. 63804
 Josh A. Migdal, Esq.
 Florida Bar No. 19136
 josh@markmigdal.com
 yaniv@markmigdal.com
 eservice@markmigdal.com

**CERTIFICIATE OF SERVICE**

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically on the Court's CM/ECF docket on April 6, 2022, which served same electronically upon all counsel of record.

*s/ Yaniv Adar*
Yaniv Adar, Esq.
Florida Bar No. 63804